# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEWIS LEROY ALBERY,**

        Plaintiff,

-vs-                                                     Case No. 6:11-cv-437-Orl-19GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

## REPORT AND RECOMMENDATION
## TO THE UNITED STATES DISTRICT COURT:

Lewis Leroy Albery, Claimant, appeals from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying his application for disability benefits (hereafter "Application"), in which he claimed a disability onset date of March 30, 2008. Doc. No. 1. Claimant raises four issues on appeal. First, Claimant argues that the Administrative Law Judge (hereafter "ALJ") erred in failing to give Sanjeev K. Shroff's, M.D., Claimant's treating cardiologist, residual functional capacity (hereafter "RFC") opinion controlling weight. Doc. No. 24 at 10-14. Second, Claimant argues that the ALJ failed to properly evaluate his credibility. Doc. No. 24 at 14-16. Third, Claimant argues that the ALJ erred in finding that his depression was a non-severe impairment. Doc. No. 24 at 16-19. Fourth, Claimant argues that the ALJ erred in relying on the vocational expert's testimony. Doc. No. 24 at 19-21.

Claimant requests the Commissioner's decision be reversed for an award of benefits. Doc. No. 24 at 21. Alternatively, Claimant requests the Commissioner's decision be reversed and remanded for a new hearing. Doc. No. 24 at 21. For the reasons set forth below, it is

1

**RECOMMENDED** that the final decision of the Commissioner be **REVERSED and REMANDED** for further proceedings because the ALJ did not articulate good cause for giving Dr. Shroff's RFC opinion less than controlling weight.

    **I.    MEDICAL AND OPINION EVIDENCE**

    **A.  Brian K. Dublin, M.D., Cardiologist**

On March 30, 2008, Claimant presented to the emergency room complaining of chest pain. R. 455-56. It was determined that Claimant had an "anterior myocardial infarction" and Brian K. Dublin, M.D., a cardiologist, performed a "left heart catheterization, coronary angiography, LV angiography, [and a] bare metal stent to the LAD." R. 238. On April 9, 2008, Dr. Dublin noted that Claimant was doing well except for slight dizziness and a cough. R. 233. Dr. Dublin indicated that Claimant "has moderate LV dysfunction and has slight symptoms of congestive heart failure." R. 233.[1] On May 2, 2008, Dr. Dublin noted that Claimant was participating in cardiac rehabilitation, climbing stairs and walking his dog. R. 230. Dr. Dublin indicated that Claimant was "cardiovascularly stable" and was hopeful his LV function would improve. R. 230. On May 30, 2008, Dr. Dublin noted that Claimant was attending cardiac rehabilitation a few times per week and denied "any real exertional symptoms," but was experiencing very fleeting sensations of chest pressure. R. 228. Dr. Dublin indicated that Claimant's chest pain was "fairly atypical" and could be of "GI origin." R. 228.

On June 6, 2008, Dr. Dublin noted that Claimant had a "hypertensive episode" while at cardiac rehabilitation and his blood pressure was low. R. 226. Dr. Dublin noted that Claimant "gets chest pressure both at rest and in exertion," but reported no such pressure when exercising intensely. R. 226. Dr. Dublin indicated that the chest pain was likely unrelated to cardiac chest

---

[1] In May 2008, Claimant appeared at the emergency room and was treated for mild pain in his left foot after he twisted it. R. 442-43.

pain and could be a problem with the stent. R. 226. On June 10, 2008, Dr. Dublin performed a second left heart catheterization, a left ventricular angiography and a coronary angiography. R. 235. On June 24, 2008, Dr. Dublin indicated that Claimant's ejection fraction improved and his chest pain had resolved after the cardiac catheterization. R. 224. Dr. Dublin suspected that Claimant's "chest pain was due to the anxiety as his stent is widely patent there are no new lesions." R. 224.

### B. Sanjeev K. Shroff, M.D., Cardiologist

On September 4, 2008, Claimant saw Dr. Shroff for a second opinion on his "cardiac status." R. 333. Dr. Shroff noted that Claimant was medication compliant and completed cardiac rehabilitation. R. 333. Dr. Shroff indicated that he would "check and echo[cardiogram] to reassess LVF," and wait for the echocardiogram results to determine whether he would make changes to Claimant's medications. R. 334. On September 10, 2008, Dr. Shroff reviewed Claimant's echocardiogram results. R. 246. Dr. Shroff indicated that Claimant's mitral and tricuspid valves showed "trace to mild regurgitation," and Claimant's "overall left ventricular systolic function is moderately reduced . . . ." R. 246. On November 11, 2008, Dr. Shroff noted that Claimant was "told to stop bystolic and start Coreg . . . . He also stopped Crestor for unclear reasons" and denied any syncope, palpitations or edema. R. 331. Dr. Shroff instructed Claimant to resume taking Crestor and call if his symptoms or problems worsened. R. 332.

On March 2, 2009, Dr. Shroff noted that Claimant was complaining of "chest pain and feels terrible." R. 329. Dr. Shroff noted that Claimant was medication compliant and denied any side effects. R. 329. Dr. Shroff ordered Claimant to undergo several tests and instructed him to seek emergency treatment if he had recurrent chest pain prior to undergoing the tests. R. 330. On March 4, 2009, Claimant went to the emergency room complaining of constant chest pain.

3

R. 428-29. Upon discharge, the treating doctor indicated that Claimant did not have a myocardial infarction, had an ejection fraction of 43% with a "predominant anteroapical scar," and a "mild peri-infarction ischemia was noted." R. 328. On April 29, 2009, Dr. Shroff referred Claimant to "EP for evaluation" and continued Claimant on his current medications. R. 327.

On July 6, 2009, Dr. Shroff noted that Claimant was drinking more fluids, was medication compliant, but was not wearing the "TED hose as prescribed" because they do not look good while wearing shorts. R. 324. Dr. Shroff discussed Claimant's noncompliance with wearing the TED stockings and continued him on his current medications. R. 325. On July 21, 2009, Dr. Shroff noted that Claimant was medication compliant but was having fairly asymptomatic hypotensive episodes at home. R. 322. On November 18, 2009, Dr. Shroff noted that Claimant "continues to have palpitations, SOB and chronic CP. He is compliant with his meds and denies side effects." R. 320. Dr. Shroff indicated he would "check a holter" and that Claimant has a "cardiomyopathy and does continue to have CP." R. 321.

On December 4, 2009, Dr. Shroff wrote a letter indicating that Claimant has a history of myocardial infarction, coronary artery disease and ischemic cardiomyopathy. R. 347. Dr. Shroff indicated that Claimant "continued to have chronic palpitations, shortness of breath and chronic chest pain." R. 347. Dr. Shroff opined that, due to his underlying condition, Claimant "cannot work in his field" and is "unable to work for at least one year if not beyond." R. 347.

On February 18, 2010, Dr. Shroff wrote a letter indicating that Claimant was diagnosed with palpitations, which were stable. R. 348. Dr. Shroff indicated that Claimant was an "[a]cceptable Risk from a cardiac standpoint" for left knee surgery. R. 348. On February 28, 2010, Dr. Shroff noted that Claimant has chronic angina, was medication compliant and that the increased dosage of Coreg helped alleviate his palpitations. R. 317. Dr. Shroff noted that

4

Claimant was recently hospitalized due to a stomach virus and hypokalemia, and that he had knee surgery scheduled for Monday. R. 317.[2] Dr. Shroff indicated that Claimant has "chronic angina and underlying CAD, but is at acceptable risk to proceed with the planned [knee] surgery." R. 318.

On May 7, 2010, Dr. Shroff completed a cardiac RFC questionnaire, stating Claimant has "severe" coronary artery disease, reduced heart function and ischemic cardiomyopathy. R. 360. Dr. Shroff indicated his clinical findings, laboratory and test results revealed severe coronary artery disease, reduced heart function on echocardiogram, dyspnea and chest pain. R. 360. Dr. Shroff identified Claimant's symptoms as chest pain, shortness of breath, fatigue and palpitations. R. 360. Dr. Shroff opined that Claimant suffers from "chronic daily angina" during exertion and at rest. R. 361. Dr. Shroff opined that stress increases Claimant's symptoms and that Claimant cannot perform even low stress jobs. R. 361. Dr. Shroff stated that Claimant's physical symptoms and limitations cause emotional difficulties such as depression and anxiety. R. 361. Dr. Shroff indicated that Claimant's cardiac symptoms are "frequently" severe enough to interfere with his attention and concentration. R. 362. Dr. Shroff offered a "guarded" prognosis. R. 362.

Dr. Shroff opined that Claimant could walk less than one block before needing to rest, could sit one hour and stand for five minutes before needing to change positions, and would need a job that permits shifting from sitting, standing or walking at will. R. 362-63. Dr. Shroff opined that Claimant would need to take frequent unscheduled breaks of "unknown" duration and would need to elevate his legs above his heart 80% of the time during an eight-hour workday if he worked a sedentary job. R. 363.

---

[2] The hospitalization Dr. Shroff refers to is Claimant's treatment after appearing at the emergency room complaining of chest pain, nausea, vomiting and diarrhea. R. 373-78, 398-99.

Dr. Shroff opined that Claimant could lift and carry less than ten pounds occasionally, ten pounds rarely and twenty pounds or more never. R. 364. Dr. Shroff opined that Claimant can occasionally twist; Claimant can rarely stoop, crouch or climb stairs; and Claimant can never climb ladders. R. 364. Dr. Shroff opined that Claimant should avoid concentrated exposure to extreme cold and humidity, and should avoid even moderate exposure to extreme heat, hazards and fumes, odors, dusts, gases and poor ventilation. R. 364. Dr. Shroff estimated that Claimant's impairments would produce good and bad days that would require Claimant to be absent from work more than four days per month. R. 365.

### C. David S. Boyer, M.D., Primary Care Physician

From 2007 through 2010, Claimant treated with David S. Boyer, M.D., his primary care physician. R. 194-99, 250, 287, 294.[3] Claimant was seen by Dr. Boyer for a general physical, sinus congestion, postnasal drip, nasal obstructive symptoms, sinus pressure, sinus pain, purulent nasal drainage, headaches, cough, congestion, anxiety/depression and general post-hospitalization follow-ups after having a coronary stent implanted. R. 194-99, 287, 294. Claimant was prescribed medications for his various complaints. R. 194-99, 287, 294. In a January 2008, treatment note, Dr. Boyer indicated that Claimant had not been compliant "with follow up [and] meds." R. 196. In a February 2010, progress note, Dr. Boyer treated Claimant for complaints of head congestion with sinus pressure, coughing, sinus congestion and chest tightness. R. 287. Dr. Boyer indicated that Claimant had "symptom flare up," but "has not been aggressive with usage of medications." R. 287.

### D. State Consultants' RFC Opinions

Two non-examining state consultants offered physical RFC assessments. R. 261-76. The

---

[3] In his memorandum, Claimant indicates that Dr. Boyer is a certified family practitioner. Doc. No. 24 at 7 n.24.

first was completed on September 30, 2008, by Clarence Louis, M.D. R. 261-68. The second was completed on December 12, 2008, by Violet Acero Stone, M.D. R. 269-76. Drs. Louis and Stone's RFC opinions are very similar. Both doctors opined that Claimant can lift and carry twenty pounds occasionally and ten pounds frequently. R. 262, 270. Both doctors opined that Claimant can stand and/or walk for two hours and sit for six hours in a normal eight-hour workday with normal breaks. R. 262, 270. Both doctors opined that Claimant does not have limitations regarding pushing and/or pulling, manipulation or vision. R. 262, 264, 270-72.

Dr. Louis opined that Claimant can occasionally crawl, crouch, kneel, balance, stoop and climb ramps or stairs, but can never climb ladders, ropes or scaffolds. R. 263. In contrast, Dr. Stone opined that Claimant did not have any postural limitations. R. 271-72. Dr. Louis opined that Claimant should avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, noise, hazards and fumes, odors, dusts, gases or poor ventilation. R. 265. Dr. Louis also opined that Claimant should avoid concentrated exposure to noise. R. 265. Dr. Stone opined that Claimant should avoid concentrated exposure to extreme cold, extreme heat, hazards and fumes, odors, dusts, gases or poor ventilation. R. 273.

## II.     ADMINISTRATIVE PROCEEDINGS

On August 7, 2008, Claimant filed his Application, alleging he is disabled due to a heart attack and cardiac catheterization. R. 88-92. Claimant's Application was denied initially and on reconsideration. R. 52-56. On May 13, 2010, the ALJ conducted a hearing where Claimant and a vocational expert testified. R. 25-44.

Claimant testified that he is forty-one years old, has a high school education and last worked for the City of Okie on March 27 or 28, 2008. R. 29.[4] Claimant testified that he worked

---

[4] In his Application, Claimant indicated he last worked for the City of Ocoee. R. 90.

for the city as a "storm water technician and a streets and heavy equipments operator." R. 30. In this job, Claimant testified that he patched potholes, inspected buildings, cleaned storm drains, used or taught others how to use a "vac" truck and took water quality samples. R. 30. Prior to working for the city, Claimant worked as a tow truck operator and a machinist. R. 30. Claimant testified that after having a heart attack, he was initially given short-term disability and then terminated from his position after being put on long-term disability. R. 32.

Claimant testified that he has had several heart catheterizations as a result of his heart attack. R. 32. Claimant testified that he takes several medications that make him drowsy and sometimes lightheaded. R. 32-33. Claimant testified that he also suffers from low back pain and cannot stand for very long because it becomes hard to breathe and he has to wear compression socks to get the blood to return to his heart. R. 33. Claimant testified that he suffers from asthma and is being treated for depression. R. 33.

Claimant testified that he cannot lift twenty pounds, but can lift ten pounds occasionally. R. 36. Claimant testified that he cannot stand two hours in an eight-hour day and can only stand for five minutes at a time. R. 36. Claimant testified that he can sit in a recliner for thirty minutes. R. 36-37. Claimant testified that he has difficulty with his memory and concentration. R. 38.

The vocational expert testified that Claimant's past jobs were either heavy or medium duty, semi-skilled positions. R. 40. The vocational expert testified that a person with Claimant's background who could occasionally lift twenty pounds, frequently lift ten pounds, stand for up to two hours in an eight-hour workday, sit for six hours in an eight-hour workday and avoided concentrated exposure to extreme heat, cold, odors, fumes and hazards could not perform Claimant's past work. R. 40-41. The vocational expert testified that such a person could

8

perform the following light, unskilled work: electronics worker, small products assembler, produce weigher and street cleaner. R. 41. Assuming the same person could perform the full range of sedentary work with the same environmental limitations, the vocational expert testified that this person could work as an assembler of optical goods, semi-conductor bonder and call out operator. R. 41-42.

The ALJ asked what jobs a person with Claimant's background, the environmental limitations outlined above and who could occasionally lift ten pounds, stand for five minutes and sit for thirty minutes before requiring a break could perform. R. 42. The vocational expert testified that such a person would need a sit/stand option, but, presuming the person sits fifty-minutes out of an hour, "can do all of the jobs I've presented." R. 42-43. The vocational expert testified that such a person could not perform any work if the person could not perform low stress jobs, walk less than one block, needed to elevate his legs 80% of the day, could lift less than ten pounds occasionally and ten pounds rarely. R. 43.

On June 9, 2010, the ALJ issued her decision, denying Claimant's Application. R. 13-20. The ALJ found that Claimant suffers from the severe impairments of heart disease and hypertension. R. 15. The ALJ found Claimant has the RFC to "perform sedentary work . . . except he should avoid concentrated exposure to extreme heat, cold, odors, gases, fumes and hazards. The claimant [can] stand for 5 minutes and sit for 30 minutes at a time before requiring a break." R. 15. In making this finding, the ALJ acknowledged the RFC opinions of Drs. Shroff, Louis and Stone. R. 17-18. The ALJ evaluated the medical opinion evidence by stating:

> As for the opinion evidence, the <u>undersigned gives weight to the claimant's emergency medical treatment records as well as his records from Dr. Boyer</u> because they demonstrate the severity of the claimant's impairments and his response to medical treatment.

9

> . . . .
>
> The undersigned however, gives little weight to the opinion of Dr. Sanjee [sic] that the claimant's [sic] would require elevating his legs above head level when sitting for prolonged periods, which is necessary for 80 percent of the time in a sedentary job. The undersigned finds that the opinion is not supported by the medical evidence and is inconsistent with Dr. Sanjee's [sic] surgical clearance of the claimant on February 18, 2010, in which he opined that the claimant's palpitations were stable.
>
> In summary, after carefully considering the entire record the undersigned is persuaded that the claimant's impairments are not as limiting as alleged and would not prevent the claimant from performing work at the residual functional capacity noted above on a regular and continuing basis.

R. 18 (internal citations omitted) (emphasis added). Thus, the ALJ gave unspecified weight to Claimant's treatment records from Dr. Boyer and his emergency room visits. The ALJ gave little weight to Dr. Shroff's RFC opinion that Claimant needs to elevate his legs 80% of the time in a sedentary job that requires prolonged sitting because it was "not supported by the medical evidence" and was inconsistent with Dr. Shroff's opinion that Claimant was an acceptable risk for knee surgery from a cardiac perspective because his palpitations were stable as of February 18, 2010.

### III. LAW

#### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

When the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well

as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## IV. ANALYSIS

Claimant raises four issues on appeal. Doc. No. 24. The Court finds the first issue dispositive: the ALJ's failure to give Dr. Shroff's RFC opinion controlling weight. The Commissioner argues that the ALJ gave "specific reasons," supported by the medical record, for giving little weight to Dr. Shroff's opinion that Claimant would need to elevate his legs above his heart during 80 percent of an eight-hour workday. Doc. No. 28 at 10. The Commissioner asserts Dr. Shroff's opinions that Claimant would need to miss more than four days of work per month and cannot work for at least a year are not entitled to any deference because they "are opinions on the ultimate issue" of whether Claimant is disabled. Doc. No. 28 at 11. The Commissioner apparently contends the ALJ was not required to state the weight given to the rest of Dr. Shroff's opinion because the "ALJ's RFC finding was either more restrictive or very similar." Doc. No. 28 at 11.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including

12

symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion." *Id*. at 1178-79. The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.'" *Id*. (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Thus, the treating physician's treatment notes constituted an opinion. *Id*. The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion. *Id*. The Eleventh

13

Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but <u>without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence</u>." *Id*. (emphasis added).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[5] Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Soc. Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."). Otherwise, the Court would be left in a situation where it would have to impermissibly reweigh the evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner.").

---

[5] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

The ALJ articulated two reasons for giving little weight to Dr. Shroff's opinion that Claimant would need to elevate his legs above his heart: it is unsupported by the medical evidence and is inconsistent with Dr. Shroff clearing Claimant for surgery on February 18, 2010, after finding Claimant's palpitations were stable. R. 18. The ALJ's first reason for giving Dr. Shroff's opinion little weight is a conclusory statement for which the ALJ provided no factual support. As such, it is not a valid basis for rejecting Dr. Shroff's opinion. *See Poplardo*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11; *Paltan*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5.

In a February 18, 2010, letter, Dr. Shroff indicated that Claimant has a cardiac diagnosis of "[p]alpitations," which were stable, and opined that Claimant was an "[a]cceptable [r]isk from a cardiac standpoint" for left knee surgery. R. 348. The ALJ does not explain how being cleared for knee surgery conflicts with Dr. Shroff's opinion that Claimant needs to elevate his legs above his heart 80% of the time during an eight-hour workday if working a sedentary job. Absent some credible explanation, supported by the record, the Court cannot determine how the ALJ concluded that Claimant being cleared for knee surgery conflicts, in any way, with Dr. Shroff's opinion that Claimant would need to elevate his legs. Accordingly, the ALJ's second reason for giving Dr. Shroff's opinion little weight is not supported by substantial evidence.

The ALJ also did not state the weight, if any, given to the rest of Dr. Shroff's RFC opinion. Specifically, the ALJ did not address Dr. Shroff's findings that Claimant suffers from "severe" coronary artery disease, has reduced heart function, dyspnea or chest pain. *See* R. 360. The ALJ did not address Dr. Shroff's opinion that Claimant cannot work even low stress jobs because he suffers from chronic angina, even at rest, and his symptoms are exacerbated by stress. *See* R. 361. The ALJ did not address Dr. Shroff's opinion that Claimant would need to miss

15

more than four days of work per month. *See* R. 365. Instead, it appears the ALJ chose to discount a portion of Dr. Shroff's opinion to bolster her finding that Claimant could perform sedentary work. The ALJ "cannot pick and choose from the evidence in order to support [her] conclusions." *Gentile v. Astrue*, No. 308-cv-1050-J-TEM, 2010 WL 1257478 at *5 (M.D. Fla. Mar. 29, 2010).

The ALJ stated that she "gives weight" to Claimant's treatment records from Dr. Boyer and his emergency room visits. R. 18. This nebulous statement does not provide the "Court with the means to make an informed decision as to whether the ALJ's decision is supported by substantial evidence." *Preast v. Comm'r of Soc. Sec.*, No. 8:08-cv-999-T-24 GJK, 2009 WL 3028315 at *15 (M.D. Fla. Sept. 16, 2009). These treatment records also do not provide any insight into Claimant's RFC vis-à-vis the severe impairments found by the ALJ: heart disease and hypertension. Dr. Boyer did not treat Claimant for either of these impairments. Dr. Boyer treated Claimant for sinus congestion, headaches, congestion, cough and anxiety/depression. R. 194-99, 287. The emergency room records simply reveal that Claimant was treated for a myocardial infarction, chest pain, foot pain, nausea and vomiting. R. 398-99, 428-29, 442-43, 455-56. These records do not provide substantial evidence to support the ALJ's RFC finding.

The ALJ also did not state the weight given to Drs. Louis and Stone's, non-examining state consultants, RFC opinions. To the extent the ALJ relied on these opinions, such reliance was erroneous. Drs. Louis and Stone rendered their RFC opinions on September 30 and December 18, 2008, respectively. R. 268, 276. Dr. Shroff rendered his RFC opinion on May 7, 2010. R. 365. Thus, Drs. Louis and Stone did not have the benefit of reviewing Dr. Shroff's RFC opinion, and specifically his determination that Claimant cannot work even low stress jobs, needs to elevate his feet above his heart and would need to miss more than four days of work per

16

month. R. 361-65. Further, Drs. Louis and Stone's RFC opinions conflict with Dr. Shroff's RFC opinion. Opinions from non-examining, reviewing doctors that are "contrary to those of the examining physician[], are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

## V. REMEDIES

The Claimant requests the Court reverse and remand for an award of benefits. Doc. No. 24 at 21. In *MacGregor*, 786 F.3d at 1053, the Eleventh Circuit stated that "[w]here the [Commissioner] has ignored or failed to properly refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." The Eleventh Circuit has recently receded from this language.

In *Lawton v. Commissioner of Social Security*, 431 F. App'x. 830, 835 (11th Cir. 2011), the plaintiff argued that the appropriate remedy was to remand for an award of benefits after the Eleventh Circuit reversed a decision affirming the denial of disability benefits because the ALJ did not state the weight given to RFC opinions offered by two of plaintiff's treating physicians. *Id.* at 835. The Eleventh Circuit acknowledged the language in *MacGregor*, but pointed out that "our earlier decisions had remanded cases to the agency when there was a failure to provide an adequate credibility determination," citing *Owens v. Heckler*, 749 F.2d 1511, 1516 (11th Cir. 1984) and *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982). Relying on the "prior precedent rule," the Eleventh Circuit remanded to the "agency so that it can make a determination in the first instance of the proper weight to be afforded to those opinions." *Id.*

In *Davis v. Commissioner of Social Security*, 449 F. App'x. 828, 833 n.1 (11th Cir. 2011), the plaintiff argued, relying on *MacGregor*, that the court should accept her treating doctor's opinion as true because the ALJ failed to articulate good cause for rejecting it. The

17

Eleventh Circuit rejected this argument because in *Wiggins*, 679 F.2d at 1390, it remanded for further findings after the ALJ failed to explain the weight given to the treating physician's opinion. "Because *Wiggins* was decided before *MacGregor*, it is that case, not *MacGregor*, that is controlling." *Id.*

*Lawton* and *Davis* make clear that a treating physician's opinion is not to be considered true as a matter of law when an ALJ either fails to state the weight given or fails to articulate good cause for rejecting the treating physician's opinion. Rather, the district court should reverse and remand for further findings. Courts in this district have cited *Lawton* for this very proposition. *See Melville v. Comm'r of Soc. Sec.*, No. 6:11-cv-94-Orl-DAB, 2012 WL 603240 at *7 n.7 (M.D. Fla. Feb. 24, 2012); *Miner v. Astrue*, No. 3:11-cv-50-J-TEM, 2012 WL 955221 at *5 (M.D. Fla. Mar. 21, 2012).

In this case, the ALJ failed to articulate good cause for rejecting Dr. Shroff's RFC opinion. The remedy is to reverse and remand for further proceedings. *See Lawton*, 431 F. App'x. at 835. Accordingly, it is **RECOMMENDED** that the case be **REVERSED** and **REMANDED** for further proceedings.[6]

VI. **CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **REVERSED and REMANDED**, pursuant to sentence four of Section 405(g) for further proceedings; and

2. The Clerk be directed to enter judgment in favor of Plaintiff and to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved

---

[6] Because the ALJ's error requires remand, it is unnecessary to address the other issues Claimant raises.

party from attacking the factual findings on appeal.

        **RECOMMENDED** in Orlando, Florida on June 7, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this order to:

Stacey B. DeVeaux, Esq.
Law Offices of Harry J. Binder & Charles Binder, P.C.
1 E. Broward Blvd.
Ft. Lauderdale, Florida 33301

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Jerome M. Albanese, Branch Chief
Megan E. Gideon, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Janet Mahon
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801